UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

J&J SPORTS PRODUCTIONS, INC.                                  CIVIL ACTION

VERSUS                                                        15-617-SDD-EWD

MADRID NIGHT CLUB L.L.C.
f/k/a AUSTIN J'S ENTERPRISE, L.L.C.
AND GHOLAM R. OTADI

## RULING

This matter is before the Court on cross *Motions for Summary Judgment* filed by J&J Sports Productions, Inc. ("Plaintiff"),[1] and Madrid Night Club L.L.C. f/k/a Austin J's Enterprise, L.L.C. and Gholam R. Otadi ("Defendants").[2] The Court has considered the *Oppositions* filed by Defendants[3] and Plaintiff,[4] as well as the Plaintiff's[5] and Defendants'[6] *Replies* in support of their respective motions. For the following reasons, the Defendants' motion will be granted in part and denied in part, and Plaintiff's motion will be denied.

### I. FACTUAL BACKGROUND[7]

Plaintiff claims that, on September 14, 2013, an investigator hired by Plaintiff observed the live broadcast of "The One" Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program" ("the fight") at Madrid Nightclub

---

[1] Rec. Doc. 13.
[2] Rec. Doc. 19.
[3] Rec. Doc. 15
[4] Rec. Doc. 22.
[5] Rec. Doc. 21.
[6] Rec. Doc. 23.
[7] The Court bases the factual background on Rec. Docs. 1 and 19-4.
38046

("Madrid"), a commercial establishment in Prairieville, Louisiana. Plaintiff alleges that it had the "exclusive nationwide commercial distribution and broadcast" of the fight.[8] Plaintiff further claims that Defendants, "with full knowledge that [the fight] was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities…did unlawfully intercept, receive, publish, divulge, display and/or exhibit [the fight.]"[9] Plaintiff further alleges that the Defendants advertised their display of the fight by neon sign and on Madrid's Facebook page and charged a $5 admission fee to view the fight. Mr. Otadi ("Otadi"), per Plaintiff, is liable as manager of Madrid. According to Plaintiff, Defendants' actions constitute a violation of 47 U.S.C. § 605, 47 U.S.C. § 553, 18 U.S.C. § 2511 (1)(A)(5) and § 2520 (a), and La.C.C. Art. 2315.

Defendants do not dispute that the fight was shown at Madrid on September 14, 2013. However, Defendants argue that they purchased a T.V. "business package" service through EATEL, a cable service provider for Madrid, and paid EATEL a pay per view fee to watch the fight. Defendants claim that EATEL mistakenly failed to place Madrid in the hospitality category when Otadi ordered cable service for Madrid. Given these facts, Defendants contend they should be able to take advantage of the safe-harbor provision of 47 U.S.C. § 553.

Both parties have moved for summary judgment on the following claims: 47 U.S.C. § 605, 47 U.S.C. § 553, 18 U.S.C. § 2511 (1)(A)(5) and § 2520 (a) as well as La.C.C. Art. 2315.

---

[8] Rec. Doc. 1, p. 8.
[9] *Id.* at p. 9.
38046

## II.  LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[11]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[12]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[13]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[14]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[15]  All reasonable factual inferences are drawn in favor of the nonmoving party.[16]  However, "[t]he Court has no

---

[10] Fed. R. Civ. P. 56(a).
[11] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[12] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[13] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[14] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[15] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[16] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[17]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[18]

### B.  Section 605

Plaintiff argues that Defendants' actions violated 47 U.S.C. § 553 and 47 U.S.C. § 605. Defendants state: "Plaintiff concedes that this action is governed by 47 U.S.C. Section 553 et seq. and not by 47 U.S.C. 605 et seq."[19]  Indeed, Plaintiff's *Memorandum* in support of their *Motion for Summary Judgment* acknowledges that "[the fight] was captured via cable television."[20]  The Fifth Circuit in *J&J Sports Productions v. Mandell Family Ventures* unequivocally stated: "we now join the majority of circuits in holding that section 605 does not encompass the conduct presented here: the receipt or interception of communications by wire from a cable system."[21]  As it is acknowledged by both Parties that the fight was displayed at Madrid via a cable system, the Court applies *Mandell* to the present case.  Accordingly, Defendants' motion as to 47 U.S.C. § 605 claim is GRANTED, and Plaintiff's motion as to 47 U.S.C. § 605 is DENIED.  Plaintiff's claims under 47 U.S.C. § 605 are dismissed.

---

[17] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[18] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[19] Rec. Doc. 19-4, p. 9.
[20] Rec Doc. 13-4,  pp. 5-6.
[21] 751 F.3d 346, 351 (5th Cir. 2014).
38046

**C. Section 553**

Plaintiff argues that Defendants' actions violated 47 U.S.C. § 553. Defendants, in turn, argue that the safe harbor provision of Section 553 applies. Section 553(a)(1) states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[22] As the Fifth Circuit succinctly held in *Mandell*, the safe harbor provision "precludes the imposition of liability on the majority of cable recipients – customers of cable providers."[23] The *Mandell* court further held, "in order for a cable customer to ensure that it is not criminally or civilly liable under [Section 553], it need only receive authorization from a cable operator for the cable services it receives."[24] Thus, if Defendants received authorization from EATEL to receive the fight, per *Mandell*, Defendants would not be civilly liable to Plaintiff for displaying the fight at Madrid.

Defendants argue that the evidence before the Court supports the application of the safe harbor provision of Section 553 as articulated by the Fifth Circuit in *Mandell*. The facts in the present case and *Mandell* differ on an important point – it was not argued in *Mandell* that the Defendants mislead the cable provider regarding the type of business it was operating. Here, Plaintiff argues that Defendants' "ignorance of EATEL's internal procedures [in determining how EATEL classifies businesses] is feigned."[25] Defendants counter that they "did obtain authority to show the program from EATEL and are,

---

[22] 47 U.S.C. § 553(a)(1)(2006).
[23] Mandell, 751 F.3d at 348.
[24] *Id*.
[25] Rec. Doc. 22-1, p. 3.
38046

therefore, not liable at all."[26] If Defendants mislead EATEL in the type of business they were operating at Madrid, they could not obtain authority from EATEL to broadcast the fight, and thus find no protection under the safe harbor provision of Section 553. Alternatively, if Defendants did not mislead EATEL on the type of business they were operating at Madrid, they properly obtained consent to show the fight and may take advantage of the safe harbor provision of Section 553.

Defendants maintain that EATEL erred in not placing Madrid in the hospitality category.[27] According to Defendants, "EATEL had no procedures for determining whether the business remained the same after the initial instillation, and it has no records of anyone ever asking Mr. Otadi what kinds of business were conducted at either location."[28] Defendants further argue that Otadi's only option "to avoid the problem that arose would have been to aggressively disclose to EATEL what business category EATEL should have used for its internal monitoring process."[29] According to EATEL, what "should have been done here is when the business changed its purpose or function and it was a bar and restaurant, then that would have changed the type of service that was delivered and it changes the fee structure as well, then this wouldn't have occurred…"[30] Defendants counter that they never changed the purpose of their business. Defendants originally had service at Southbay Autoplex, another business owned by Otadi, and, at a later date, called to have service provided to Madrid, a nightclub adjacent to Southbay Autoplex – essentially arguing that there were always two businesses, not

---

[26] Rec. Doc. 15, p. 10.
[27] *See* Rec. Doc. 19-4, p. 2.
[28] Rec. Doc. 19-4, p. 4.
[29] *Id.* at pp. 7-8.
[30] Rec. Doc. 19-7, pp. 32-33.
38046

one business that changed its purpose.[31]

Considering the presence of conflicting testimony of the EATEL representative, a credibility issue is before the Court. Credibility determinations are improper on summary judgment. As the Supreme Court held in *Anderson v. Liberty Lobby, Inc.* "the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if they moving party is entitled to judgment as a matter of law."[32] Whether Defendants failed to properly disclose the nature of their business to EATEL is a genuine issue of material fact that is contested by both Parties. Because "reasonable minds could differ as to the import of the evidence,"[33] Plaintiff's and Defendants' *Motion for Summary Judgment* on Plaintiff's Section 553 claim is DENIED. For the same reasons, the *Motions for Summary Judgment* on the issue of Otadi and Austin J's liability under Section 553 and enhanced damages under Section 553 is also DENIED.

### D. Section 2511 (1)(a)(5) and Section 2520 (a)

Plaintiff appears to move for relief on all the claims asserted, including claims under 18 U.S.C. § 2511(1)(a)(5) and § 2520(a); however, Plaintiff provides no argument or evidence in support of these claims. Having offered no evidence of or jurisprudence in support of these claims, Plaintiff's *Motion for Summary Judgment* on Section 2511(1)(a)(5) and Section 2520(a) is DENIED.

To the extent that Defendants' *Motion for Summary Judgment* may be construed as seeking summary judgment on Plaintiff's Section 2511(1)(a)(5) and Section 2520(a) claims, the motion is likewise DENIED as Defendants have offered no argument or

---

[31] Rec. Doc. 19-4, p. 8.
[32] 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
[33] *Id.* at 250.
38046

evidence in support of this claim.

### E. Plaintiff's Louisiana Conversion Claim

Plaintiffs' claim under Louisiana Civil Code article 2315 necessarily turns on whether the Defendants' violated Section 553.  If the Defendants did not violate federal law in intercepting the fight, logically they could not have committed the tort of conversion under Louisiana law.  Because Plaintiff's conversion claim is dependent upon the resolution of Plaintiff's Section 553 claim, Plaintiff's and Defendants' *Motions for Summary Judgment* regarding Plaintiff's Louisiana Conversion claim are DENIED.

### III. CONCLUSION

For the reasons stated above, Plaintiff's *Motion for Summary Judgment* is DENIED,[34] and Defendants' *Motion for Summary Judgment* is DENIED,[35] except as to Plaintiff's Section 605 claim, which is GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 21, 2017</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[34] Rec. Doc. 13.
[35] Rec. Doc. 19.
38046